J-S26006-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: TERMINATION OF PARENTAL RIGHTS TO B.D.C., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: W.C., MOTHER | : : : : : : : | |
| | : | No. 532 MDA 2022 |

Appeal from the Decree Entered March 8, 2022,
in the Court of Common Pleas of Centre County,
Orphans' Court at No(s): 2021-4521A.

| | | |
|---|---|---|
| IN RE: TERMINATION OF PARENTAL RIGHTS TO Z.T.C., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: W.C., MOTHER | : : : : : | |
| | : | No. 533 MDA 2022 |

Appeal from the Decree Entered March 8, 2022,
in the Court of Common Pleas of Centre County,
Orphans' Court at No(s): 2021-4522 A.

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:          **FILED SEPTEMBER 30, 2022**

In this consolidated matter, W.C. (Mother) appeals the decrees issued

by the Centre County Court of Common Pleas, which terminated her rights to

two sons, 5-year-old Z.T.C and 12-year-old B.D.C. (the Children), pursuant

_____

[*] Former Justice specially assigned to the Superior Court.

to the Adoption Act. **See** 23 Pa.C.S.A. § 2511(a)(2), (5), and (b).[1]  After

careful review, we affirm.

The orphans' court opinion provides the relevant factual and procedural

history:

> Centre County Children and Youth Services (CYS) has a lengthy and consistent involvement with the [] family, during which Mother and [Father] have been hostile, difficult, and uncooperative with what CYS asked of them. In February of 2020, CYS received a referral concerning drug use by Mother and Father and inappropriate supervision of Z.T.C. and his older brother, B.D.C. (the Children).  CYS visited B.D.C. at school and reported that B.D.C. presented himself in a stoic manner with minimal emotional expression, appearing cold and discomforted, when asked about Mother and Father.  CYS then conducted a home visit, during which Mother reacted with hostility, refusing a drug test and refusing to allow CYS entry to the home.  Subsequent unannounced home visits by CYS caseworkers were frequently met with similar hostility, refusal of drug tests, and refusal of entry.
>
> The February 2020 home visit was prompted by a referral source's concern that Z.T.C. was left home alone.  A responding CYS caseworker observed that Z.T.C. was shirtless and appeared disheveled, with a red substance on his face.  Z.T.C. advised the responding caseworker that Father was sleeping.  The caseworker attempted knocking at several entrances to the home and called for police assistance before Mother arrived home and awoke Father.  In response to the caseworker's concern that Z.T.C. was being inappropriately supervised, Mother and Father advised that Father typically slept during the day while Z.T.C. either slept or went about the house, which was characterized by clutter and numerous home improvement materials, to include open cans of paint.

---

[1] The court also terminated the rights of D.C. (Father), who did not appeal.

A safety plan was developed, which Mother and Father initially objected to but agreed to cooperate with after some negotiation with CYS. CYS reported that Mother did not take the safety plan seriously and consistently failed to appreciate CYS' concerns regarding the inappropriate supervision of the Children. Following continued concerns regarding drug use in the home and failure to cooperate with CYS, with no progress made to remedy CYS' concerns, CYS moved for emergency custody of the Children, which was granted on February 20, 2020.

On February 27, 2020, CYS conducted a home visit, during which CYS caseworkers were allowed into a dining room but were denied access to any other part of the home. Mother and Father also refused to take drug tests, with Father expressing concern that he may have methamphetamines in his system.

The Children were ultimately adjudicated dependent by this court on March 2, 2020 and placed in the care of a kinship foster parent, [G.B.], who is the Children's maternal half-brother's grandmother. Throughout their placement with [Foster Mother], the Children have expressed love and affection for [Foster Mother] and considered her their grandmother, expressing a desire to stay with her.

A Child Permanency Plan was developed, and a CYS placement worker began working with the family in April of 2020. Mother and Father were consistently uncooperative with CYS' efforts and directives and often refused to speak with the placement worker. The placement worker considered Mother and Father to have made no progress, due to their consistently positive testing for methamphetamines, hostile relationship with CYS, and failure to meet the goals outlined in the Children Permanency Plan.

Purchased reunification services were opened with Family Intervention Crisis Services (FICS) in September 2020. During supervised reunification visits between Mother and Father and the Children, Mother and Father presented as loving and caring with the Children, but FICS expressed concern over a demonstrated lack of discipline over the consistent provision of inappropriate snack items to the Children, who required extensive dental work. During FICS'

involvement with the family, Mother and Father made no further progress, due to continued substance abuse, failure to cooperate with FICS, failure to attend meetings and visits, and failure to address Mother's substance abuse and mental health needs, even though she earlier expressed an interest in addressing those issues. FICS remained working with the family through February 2021.

On February 4, 2021, CYS filed a petition for involuntary termination of parental rights of Mother and Father. A hearing was held on January 25, 2022 and continued on March 4, 2022. The court entered the order terminating Mother's parental rights on March 4, 2022.

Orphans' Court Opinion, 4/20/22 (O.C.O.), at 1-3 (capitalization adjusted).

Mother timely filed these appeals. She presents the following issues for our review, which we reorder for ease of disposition:

1. The trial court erred in terminating the parental rights of Mother: Insufficient evidence was presented to demonstrate by a clear and convincing standard that the issues which prompted Children and Youth Services' involvement continued to exist at the time of the hearing and could not or would not be remedied by Mother.

2. The trial court did not adequately consider Mother's efforts at rehabilitation, which included, among other things, efforts to attend substance use disorder counseling and mental health counseling.

3. Termination is not in the Child[ren]'s best interests due to its negative impact on the parent-child bond. The court did not place sufficient weight on the bond between Mother and the Child[ren].

Mother's Brief at 2-3.

We begin our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact

and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

The Supreme Court has repeatedly stated that in termination cases, deference to the trial court is particularly crucial. *In re Adoption of L.A.K.*, 265 A.3d 580, 597 (Pa. 2021); *see also Interest of S.K.L.R.*, 265 A.3d 1108, 1124 (Pa. 2021) ("When a trial court makes a 'close call' in a fact-intensive case involving…the termination of parental rights, the appellate court should review the record for an abuse of discretion and for whether evidence supports that trial court's conclusions; the appellate could should not search the record for contrary conclusions or substitute its judgment for that of the trial court.").

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section

2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.*, 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting *Matter of Adoption Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)). We add that we may uphold a termination decision if any proper basis exists for the result reached. *C.S.*, 761 A.2d at 1201. Importantly, we need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

We address Mother's first two appellate issues together as they both pertain to Section 2511(a). Because we may affirm under any one subsection, we review the orphans' court determinations under Section 2511(a)(2). That section provides:

> **(a)** **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> [...]
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the

> incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *C.M.K.*, 203 A.3d at 262 (citation omitted).

On appeal, Mother focuses on the third element of the Section 2511(a)(2) inquiry. She argues that CYS failed to provide sufficient evidence showing her inability to remedy the conditions that caused the Children to be without parental care. Critical to Mother's argument is her characterization of those conditions. Mother reasons that the Children were only removed because Father had fallen asleep when he was supposed to be supervising them. Thus, in Mother's view, because she can properly supervise the Children, CYS could not show her inability to remedy the conditions that caused them to be without parental care. She concludes that termination under Section 2511(a)(2) was unwarranted. *See* Mother's Brief at 9.

Mother oversimplifies the conditions that led the Children to be without parental care. CYS had extensive involvement and concerns with the family before the case became court-active. CYS questioned the suitability of the home and whether the Children received appropriate care; but CYS was

specifically concerned with the parents' drug use. The parents had refused to let CYS into the home and they refused to submit to drug-testing. The parents did, however, agree to a safety plan, which provided that another adult would be with Father if the Children were in his care. Only after Father failed to abide by the safety plan did CYS seek removal. Even then, removal only occurred after CYS received two prior referrals.

The question remains whether CYS demonstrated Mother lacked the ability to remedy these conditions. Critically, Mother consistently tested positive for illicit drugs, and she did not avail herself of the services offered to aid with reunification. The court also noted that Mother failed to recognize the concerns CYS had with her parenting. Putting aside Mother's drug use, the court could not trust Mother to care for the Children when she refused to acknowledge these concerns.

Mother argues that her antagonism towards CYS should not be a basis for termination, maintaining that she has a right to disagree with the concerns advanced by CYS. **See** Mother's Brief at 9-10. We agree, however, this matter does not involve a well-intentioned disagreement between a parent and caseworker. At times, Mother was downright hostile toward the service providers, and she refused to participate in the reunification plan. Here, the orphans' court did not terminate Mother's rights as punishment for her poor attitude; rather, the court simply believed the testimony that Mother made no real effort to alleviate the circumstances which led to the Children's removal.

To that end, Mother argues that the trial court did not adequately consider the steps Mother did take to meet her goals. The orphans' court opined:

> Mother has failed to recognize the problems which led to the Children's placement, and took minimal action to remedy the concerns CYS and FICS had about the Children remaining in or returning to Mother's care. Mother did not properly avail herself of services offered by the agencies, and failed to show she had made progress in, or even tried to make progress in, reaching goals necessary for reunification.

O.C.O. at 6.

Mother was offered a range of services for nearly a year before CYS petitioned to terminate her rights. Mother did not participate in these services in any meaningful way. At most, Mother conveyed a willingness to consider these resources, before ultimately declining to follow through. We reiterate that we will not search the record for contrary conclusions or substitute our judgment for that of the orphans' court. *See **S.K.L.R.***, *supra.* For these reasons, Mother's first and second appellate issues are without merit. The orphans' court conclusions under Section 2511(a)(2) were supported by the record.

We turn to the second portion of the bifurcated termination analysis under Section 2511(b):

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as

inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(b).

This Court has explained that:

[S]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

Concerning the bond, the question is not merely whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship. *See C.M.K.*, 203 A.2d at 264 (citation omitted); *see also K.Z.S.*, 946 A.2d at 764 (holding there was no bond worth preserving where the child had been in foster care for most of the child's life, which caused the resulting bond to be too attenuated). Moreover, the court is not required to use expert testimony to resolve the bond analysis. *In re Z.P.*, 994 A.2d 1108,

1121 (Pa. Super. 2010) (citing *In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008)).

"Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *T.S.M.*, 71 A.3d at 268. Finally, we emphasize that "[w]hile a parent's emotional bond with her and/or her child is a major aspect of the Section 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted).

On appeal, Mother argues that she loves the Children and that the bond she has with them defeats a finding that termination was warranted under Section 2511(b). *See generally* Mother's Brief at 11-13. However, "[a] parent's own feeling of love and affection, alone, does not prevent termination of parental rights. *Z.P.*, 994 A.2d at 1121 (citing *In re L.M.*, 923 A.2d 505, 512 (Pa. Super. 2007)). And we reiterate that the question is not whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship. *See C.M.K.*, *supra.*

The orphans' court opined:

> Here, terminating Mother's parental rights would not destroy any existing, necessary, or beneficial relationship for the Children. The Children have not been in Mother's care without supervision for over two years. Terminating Mother's parental rights will not cause irreparable harm to the Children. Both CYS and FICS have provided testimony recommending the termination, in light of the fact that

termination of Mother's parental rights would not be detrimental to either of the Children and in light of the continued concerns for the Children's health and for the lack of consistency and stability the Children would continue to face without termination of Mother's parental rights. The Children have developed a loving relationship and strong bond with [Foster Mother], who has provided a stable and loving home environment for them.

Because the Children have developed a strong bond with [Foster Mother] and because she has provided them with the stability they lacked under the care of Mother and Father, it is in the best interests of the Children that Mother's parental rights be terminated.

T.C.O. at 8.

Upon our review, we conclude the record supports the orphans' court conclusions. We therefore discern no error or abuse of discretion. Mother's final appellate issue is without merit.

Based on the foregoing, we hold that the orphans' court properly determined CYS established that termination was warranted under Section 2511(a)(2) and (b).

Decrees affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 09/30/2022

- 12 -